RECEIVED

APR – 6 2009 *uh*

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| DISASTER RELIEF SERVICES OF NORTH CAROLINA, LLC | CIVIL ACTION NO. 07-1925 |
| versus | JUDGE TRIMBLE |
| EMPLOYERS MUTUAL CASUALTY INSURANCE COMPANY | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a motion for summary judgment[1] filed by defendant Employers

Mutual Casualty Insurance Company ("EMC") in which it seeks judgment in its favor as to all

claims against it by plaintiff Disaster Relief Services of North Carolina, LLC ("DRS"). For the

reasons expressed herein, the court finds that the instant motion should be GRANTED in part

and DENIED in part.

## I.    BACKGROUND

### *Relevant Facts*

This case arises out of the unfortunate occurrence of Hurricane Rita in September of

2005.   At the time of the storm, Gregory Turner ("Turner") owned the Terrace Apartments,

located in Lake Charles, Louisiana.[2]   This property was insured by EMC under a business

---

[1] R. 19

[2] R. 1-1 at ¶ 3.

1

protection policy which included coverage for damage to property and loss of business income.[3] After the storm, Turner filed a claim with EMC under that policy for certain damage to the property and loss of rental income.[4]

DRS alleges that Turner hired Paramount Insurance Repair Service ("Paramount") to do the "initial tear out and damage mitigation work" on the property.[5] DRS alleges that, without Turner's permission, EMC contacted Paramount and negotiated the scope and cost of all the repairs to the property, without regard to the limited authority Turner had given Paramount.[6] DRS asserts that Turner had no knowledge of this agreement between Paramount and EMC. DRS alleges that Turner became dissatisfied with Paramount and, after firing that company, engaged DRS to complete all necessary repairs.[7] DRS alleges that EMC failed to adjust and provide coverage for certain property losses and damage, despite receiving sufficient proofs of loss from Turner and DRS.

DRS claims entitlement to these causes of action by virtue of its purported purchase of the property, as well as all rights to future insurance proceeds from EMC based on the claim at issue, from Turner.[8] DRS seeks recovery of full compensation for property loss and damage pursuant to the policy issued by EMC, as well as penalties and attorney fees under La R.S.

---

[3]Policy No. 3A1886606 attached as "Exhibit A" to motion.

[4]R. 1-1.

[5]R. 23-1.

[6]R. 23-1 at pp. 1-2.

[7]Id.

[8]R. 23-1 at pp. 2, 6-9.

22:658 and 22:1220.[9]

EMC filed the instant motion for summary judgment on the basis that DRS has no right of action against it because the language of the insurance policy prohibits the assignment of "rights and duties" under the policy without the insurer's written consent.[10] EMC also asserts that, because DRS is not entitled to claim coverage under the policy issued to Turner, it also lacks a right of action under La. R.S. 22:658 and 22:1220 because these statutes create civil liability based on conduct by an insurer toward its insured and certain third party claimants and because these strictly personal rights are not assignable under Louisiana law.[11] Alternatively, EMC asserts that DRS cannot demonstrate a genuine issue of material fact as to whether or not EMC acted in bad faith with respect to adjusting and settling the property damage and loss of business income claim instituted by Turner.[12]

### Applicable Standard

The motion before the court requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no

---

[9]The court is aware that these statutes have been renumbered as La R.S. 22:1893 and 22:1973, respectively. This suit was filed before January 1, 2009, the effective date of that renumbering. Acts 2008, No. 415, § 1. Accordingly, we will refer to these statutes by their former numbers with respect to this case.

[10]R. 19 at pp. 7-8.

[11]R. 19 at pp. 8-10.

[12]R. 19 at pp. 10-19.

3

genuine issue as to any material fact..."[13] A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[14] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[15]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[16] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[17] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial.[18] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact

---

[13]Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[14]Anderson, supra, 477 U.S. 242, 248.

[15]Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[16]Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[17]SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[18]Fed. R. Civ. P. Art. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

issue not pled by the non-moving party.

If the moving party, here defendant, fails to demonstrate the absence of material fact questions or if plaintiffs, on the other hand, succeed in demonstrating the existence of such questions, the motion must be denied.[19]

## II.    ANALYSIS

### *Does Turner's purported assignment of insurance proceeds create a right of action in favor of DRS against EMC?*

EMC requests summary judgment as to DRS's claims against it for coverage under the business protection policy issued to Turner on the basis that (1) DRS is not a named insured, (2) the policy at issue expressly prohibits the transfer of rights or duties under the policy without the insurer's written consent and (3) the rights purportedly transferred by Turner were novated because they pertained to a strictly personal obligation under La. Civ. C. Art. 2642.

Plaintiff DRS argues that Turner only assigned a debt to DRS, rather than a "right." Citing Carroll W. Maxwell Lumber Company, Inc. v. Jefferson Insurance Company of New York,[20] DRS asserts that, because the damage to property is alleged to have occurred at the time Turner, the insured, owned the property, the assignment of insurance proceeds is valid. In Maxwell Lumber, the Louisiana Third Circuit considered whether or not an assignment of insurance proceeds was valid under Louisiana law and affirmed the trial court's finding that it was. In that case, a log splitter was vandalized and sustained property damage. Lachley, the splitter's original owner, assigned ownership of the splitter and rights to insurance proceeds from

---

[19]Gonzales, supra, at *2, citing Taita Chem. Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377 , 388-89 (5th Cir. 2001).

[20]338 So.2d 370 (La. App. 3 Cir. 1976).

the property damage claim to plaintiff. The court found that the assignment was valid because the vandalism and resulting damage occurred while Lachley, the named insured under the property insurance policy issued by defendant, still owned the splitter.

Although Maxwell Lumber does not specifically address the preclusive policy language at issue in this case, the court finds that applicable Louisiana jurisprudence supports the argument advanced by DRS. In Fontenot v. Hanover Insurance Company,[21] a more recent Louisiana Third Circuit case, the court considered whether or not the trial court's grant of defendants' exception of failure to join necessary party was proper when the insured failed to join a creditor to whom he had "assigned" his right to proceeds under a fire insurance policy issued by the defendant insurer. Fontenot, seeking to overcome the exception and attain the proceeds under the policy, argued that the policy contained a non-assignment clause which nullified his purported assignment because he had not first sought the consent of the insurer. The court rejected this argument, acknowledging that it is "an elementary point of insurance law...well-settled in all jurisdictions" that, even where a policy contains a non-assignment clause, an insured is free to assign post-loss insurance proceeds to a third party without the consent of the insurer.[22] The appellate court affirmed the ruling of the trial court, finding that the assignee was a necessary party to plaintiff's suit.

Fontenot appealed the ruling to the Louisiana Supreme Court, which reversed the Third Circuit's ruling on the basis that the instrument at issue, reproduced in the appellate opinion, did

---

[21]84-315 (La. App. 3 Cir. 11/7/84); 465 So. 2d 743, rev'd on other grounds, 465 So.2d 678 (La. 1985).

[22]Id. at 748 (citing 43 Am.Jur.2d Insurance §§ 789-92 (1982).

not constitute an assignment, but rather a pledge under La. Civ. C. Art. 3133 because it transferred rights to a creditor in security or collection of a debt owed by Fontenot.

A recent ruling by the U.S. District Court for the Eastern District of Louisiana is also in accord with Maxwell Lumber and Fontenot as to the assignment of insurance proceeds. In the case of In re Katrina Canal Breaches Consolidated Litigation,[23] the court began with the premise that, since the Louisiana Supreme Court has yet to rule on the issue, its role was to make an "Erie guess" as to how the state's high court would decide the case, adhering to Louisiana civilian law theory and examining the state's constitution, codes and statutes.[24] After lengthy analysis, the court concluded that the great weight of relevant authority supported the argument that post-loss assignments of insurance proceeds were proper, even in the face of non-assignment clauses in the insurance policies themselves. The court agreed with scholarly observations that the purpose of such a clause was to prevent an insured from assigning the insurance to a party so as to create an increased risk for which the insurer did not price the policy. Reasoning that, after the loss has occurred, the claim is set and an assignment of the claim does not increase insured risk, the court found that the obligation owed after loss is identical no matter to whom the insurer owes it and, therefore, assignment was in keeping with the policy behind non-assignment clauses.[25]

The court finds that, under the jurisprudence cited above, Turner was entitled to assign or pledge the rights to proceeds from the business protection policy issued by EMC because the

---

[23]2009 WL 546660 (E. D. La. 3/5/09).

[24]Id. at *4. The court notes that, as of the date of issuance of this ruling, the Louisiana Supreme Court still has not spoken on the issues presented herein.

[25]Id. at *6-11.

instrument executed between Turner and DRS was confected after the property damage occurred. The court notes that neither DRS, nor EMC has filed a copy of the assignment between Turner and DRS into the record in this case. The affidavit executed by Richard Norton, owner of DRS, seems to suggest that the transfer of rights to insurance proceeds and the sale of the property was made in contemplation of DRS's concern that it would not be paid for the repairs it had already completed.[26] Thus, it may be that the instrument at issue is, as in Fontenot, actually a pledge rather than an assignment. We find that, although the court is unable to determine whether an assignment or pledge is at issue, the result is a distinction without a difference in this case because plaintiff is the assignee or pledgee in any case.[27] Accordingly, we need not address the necessity of Turner as a party for purposes of DRS's claim for insurance proceeds.

Given the jurisprudence cited above, the court finds that it also need not address EMC's remaining arguments as to DRS's claim for insurance proceeds. EMC's motion will be denied in that we find DRS does have a right of action as asserted in this case.

### *Does DRS's right of action against EMC include claims for penalties and attorney fees under La. R.S. 22:658 and 22:1220 for bad faith practices?*

EMC's motion seeks summary judgment as to DRS's bad faith claims under Louisiana law on the basis that (1) DRS lacks a valid underlying substantive claim upon which insurance coverage is based and (2) claims under La. R.S. 22:658 and 22:1220 are not assignable.

---

[26] Affidavit of Richard Norton attached as exhibit to memorandum in opposition to motion at R. 23-5.

[27] EMC's reply brief informs the court that DRS no longer owns the apartment complex at issue in this case by virtue of a sale which allegedly occurred one day after the assignment of rights by Turner. EMC does not argue, however, that DRS assigned or sold its rights of action against EMC in such a transaction and, accordingly, we do not find this fact relevant to the pending motion. See R. 24 at p. 4.

8

EMC cites <u>Clausen v. Fidelity and Deposit Co. of Maryland</u>[28] and <u>Tatum v. Colonial Lloyds Ins. Co.</u>[29] as authority for the theory that Louisiana law requires that a party asserting claims for bad faith conduct by an insurer must also have a valid claim to insurance proceeds. In <u>Clausen</u>, the Louisiana First Circuit Court of Appeals held that, because Clausen's claim for conversion of funds had prescribed, her claim against the alleged tortfeasor's insurer was also prescribed. The court reasoned that R.S. 22:658 and 22:1220 were intended to punish insurers for specific conduct related to insurance claims. Since the insurer does not owe coverage unless the insured is legally responsible for the injury, the court found that there could be no bad faith in that case.[30] Clearly, this case does not speak to the facts before this court.

In <u>Tatum</u>, the Louisiana Third Circuit Court of Appeals found that Tatum was not entitled to assert claims under R.S. 22:658 and 22:1220 because his underlying tort claim against the insured was only valid in Texas. The court, citing authority similar to that of <u>Clausen</u>, found that since Tatum had no valid underlying claim under Louisiana law, no punitive statutes could be applied.

While the court certainly acknowledges the maxim that a valid underlying claim must exist in order to give rise to a claim for penalties and attorney fees under R.S. 22:658 and 1220, we find that, having already concluded that DRS has a valid cause of action for insurance proceeds in this case, we must also reject EMC's argument above.

EMC next asserts that rights of action under R.S. 22:658 and 1220 are strictly personal

---

[28] 95-0504 (La. App. 1 Cir. 9/13/95); 660 So. 2d 83.

[29] 97-38 (La. App. 3 Cir. 2/6/98); 702 So.2d 1076.

[30] <u>Clausen</u>, 660 So.2d at 85-86.

rights which may not be assigned under Louisiana law. EMC avers that the penalty statutes at issue create personal injury rights of action. EMC cites several cases, including Gilboy v. American Tobacco Company,[31] as authority for its argument that Louisiana courts have consistently held that personal injury rights of action are not assignable. In Gilboy, the Louisiana First Circuit Court of Appeals held that the trial court properly sustained defendant's exception of no right of action because a cancer victim could not transfer personal injury claims against defendant cigarette manufacturer by donation inter vivos. The court found, however, that the trial court erred in not allowing the plaintiff to amend the petition to add the actual victim as a party plaintiff to the suit, as such amendment would have resulted in no prejudice to defendant. While we agree that it is well settled in Louisiana jurisprudence that personal injury rights are not assignable during the life of the assignor, we find that more recent jurisprudence more squarely addresses the issue before us.

In Pontchartrain Gardens, Inc. v. State Farm General Ins. Co.,[32] a recent case in the U.S. District Court for the Eastern District of Louisiana, facts similar to those now before us were considered. Plaintiff was the owner of a 44-unit apartment complex in Slidell, Louisiana that sustained damage during Hurricane Katrina in September of 2005. The complex was insured by defendant State Farm. State Farm's adjuster determined that the complex sustained wind damage and plaintiff was presented with an estimate for repairs reflecting that finding. Plaintiff felt that the estimate was too low and requested reinspection on December 1, 2005. Plaintiff sold the complex to Viper Investments, LLC on January 24, 2006 in an act of sale containing an

---

[31] 87-1644, 87-1645 (La. App. 1 Cir. 2/28/89); 540 So.2d 391.

[32] 2009 WL 86671 (E.D. La. 1/13/09).

assignment clause which read:

> All rights to insurance proceeds pertaining to hurricane
> damage to the property conveyed herein including but not
> limited to insurance for loss of income and flood, fire
> and wind damage previously paid to seller are retained
> by seller. Any additional insurance proceeds payable as
> a result of hurricane damage (excluding loss of income)
> are assigned to the Purchaser.[33]

The insurance policy issued by State Farm contained a non-assignment clause which read:

> Your rights and duties under this policy may not be transferred
> without our written consent except in the case of death of the
> Named Insured.[34]

The court began its analysis with La. Civ. C. Art. 2642 which provides that

> all rights may be assigned, with the exception of those pertaining
> to obligations that are strictly personal. The assignee is subrogated
> to the rights of the assignor against the debtor.

Quoting Del-Remy Corp. v. Lafayette Ins. Co., the court explained that the assignee only acquires the rights possessed by the assignor at the time of assignment.[35] Citing King v. Illinois Nat'l. Ins. Co., Steirwald v. Phoenix Ins. Co., and Sanderson v. H.I.G. P-XI Holding, Inc., the court rejected State Farm's argument that the assignment at issue was actually a defective transfer of litigious rights under La. Civ. C. Art. 2652, holding that Art. 2652 does not pertain to nascent causes of action.

The court looked to the specific language of Art. 2642 and, citing the Louisiana Civil

---

[33]Id. at *1.

[34]Id.

[35]Id. at *3.

11

Law Treatise on Insurance,[36] the court found that rights of action under La. R.S. 22:1220 are not strictly personal rights and therefore could be assigned under Art. 2642.

In re Katrina Canal Breaches Consolidated Litigation reached a different result by the same court just months later. The Louisiana Eastern District Court dismissed the State's claims for bad faith insurer practices relying on the language of the actual assignment executed by each of the original insureds. The court, citing Louisiana state and federal cases, the court reasoned that, since an obligor can only be bound to that which is assigned, an assignee can only assert those claim which it was actually assigned.[37] Examining the specific language of the assignment (termed a subrogation by that court), the court found that rights of action under La. R.S. 22:658 and 22:1220 were not specifically assigned and, therefore, could not be asserted by the assignee, the State of Louisiana.[38]

Like the Pontchartrain Gardens court, we find that the assignment of rights under La. R.S. 22: 658 and 22:1220 does not run afoul of the protections afforded insurers by non-assignment clauses, as those clauses are meant to prevent the assignment of a policy, rather than accrued rights thereunder. Accordingly, we find that Turner was entitled to assign his rights of action, to the extent that these were accrued at the time of assignment, to DRS. This court also agrees with the reasoning of the Louisiana Eastern District Court in the Katrina Canal Breaches case that, pursuant to Louisiana law concerning obligations and assignments, any assignment of rights

---

[36]William Shelby McKenzie and H. Alston Johnson, 15 Louisiana Civil Law Treatise § 222.

[37]In re Katrina Canal Breaches Consolidated Litigation, 2009 WL 546660 at *12.

[38]Id.

of action under La. R.S. 22:658 and 22:1220 must be expressly provided for in the act of assignment.

Noting again that no copy of the assignment has been produced in this matter, the court is unable to determine whether such assignment provided specifically for the assignment of rights of action. Again, neither party has contested the validity of the assignment at issue. Accordingly, our ruling herein is limited to a finding that, given a valid express assignment of rights of action under La. R.S. 22:658 and 22:1220, DRS is entitled to assert such claims against EMC.

### *Is EMC entitled to summary judgment on the merits of DRS's claims under La. R.S. 22:658 and 22:1220?*

EMC argues that, if the court finds that DRS is the proper assignee of rights of action for penalties, attorney fees and damages under La. R.S. 22:658 and 22:1220, it is still entitled to dismissal of these claims because the uncontroverted facts of this case do not demonstrate bad faith conduct. EMC's memorandum in support of its motion sets forth a litany of facts, including dates, which it suggests as proof that EMC timely tendered amounts it found to be due and did not engage in conduct which was arbitrary, capricious, or without probable cause.[39] EMC offers the affidavit of Thomas Monnier ("Monnier"), the claims adjuster in charge of the property and loss of income claims at issue.[40]

DRS responds to the motion by asserting that genuine issues of material fact do exist as to whether or not EMC engaged in bad faith conduct. DRS also argues that it is disadvantaged

---

[39]R. 19-3 at pp. 12-19.

[40]R. 19-7.

in trying to identify all such outstanding issues because of the lack of discovery which has been completed in this case.[41]  DRS lists the following questions of material fact in opposition to summary judgment:

- How much will it cost to properly repair the insured property?

- Was EMC's requirement that Turner hire an attorney before they would consider the supplements of DRS an act of bad faith?

- Did EMC violate its duty to the insured by negotiating an "agreement" with Paramount that there would be no future supplemental claims on this loss?  Does such an agreement result in a reduction of coverage guaranteed in the policy?

- Did the hurricane force winds and...debris...damage the air conditioning units that sat on top of the insured property?  If so, did EMC act in bad faith in refusing to adjust that portion of the loss?

- Did hurricane force winds and...water...damage or otherwise necessitate the replacement of electrical wiring in the insured property?  If so, did EMC act in bad faith in refusing to adjust that portion of the loss?

- Did the loss of electricity, high humidity and the prohibition against re-entering the parish cause damage to the refrigerators located on the insured property?  If so, did EMC act in bad faith by refusing to adjust that portion of the loss?[42]

---

[41]Although the dispositive motions deadline has yet to lapse in this case, currently set for trial on September 14, 2009, the court cautions that, as stated in the court's trial fixing order, no continuances will be granted absent a showing of good cause and neglecting to attend to discovery is not considered good cause.

[42]R. 23-1 at p. 5

DRS offers affidavits by Turner,[43] Phillip Becker ("Becker")[44] (the attorney hired by Turner) and Richard Norton ("Norton")[45] (owner of DRS) in support of both of these allegations of bad faith.

EMC asserts that DRS has no evidentiary basis for its assertion that a secret agreement was reached between EMC and Paramount and that the mere suggestion of this conduct is insufficient to avoid summary judgment.[46] EMC also argues that the lack of summary judgment evidence produced by DRS in response to the motion is not excused by DRS's claim that it needs further discovery to support its claims.

La. R.S. 22:658 and 22:1220 are penal in nature and must be strictly construed.[47] The conduct prohibited by R.S. 22:658(A)(1) is virtually identical to that prohibited in R.S. 22:1220(B)(5): an insurer's failure to timely pay a claim after receiving satisfactory proofs of loss when that failure is arbitrary, capricious or without probable cause.[48] The main difference between these statutory provisions is the length of grace period given to the insurer to perform its duty in each.[49] R.S. 22:658 allows the insurer thirty (30) days in which to tender amounts due after receipt of satisfactory proofs of loss, while R.S. 22:1220 allows the insurer sixty (60) days

---

[43]R. 23-6.

[44]R. 23-4.

[45]R. 23-5.

[46]R. 24 at p. 5.

[47]Hart v. Allstate Ins. Co., 437 So.2d 823, 827 (La. 1983).

[48]Calogero v. Safeway Ins. Co. of La., 99-1625 (La. 1/19/00), 735 So.2d 170, 174.

[49]Id.

in which to make its tender.[50]  Another difference between these provisions is that R.S. 22:658 allows for the recovery of penalties and reasonable attorney fees, while R.S. 22:1220 only allows for the recovery of penalties.[51]  A party may seek recovery of penalties under either statute and attorney fees under R.S. 22:658, but double recovery of penalties is not permitted.[52]

A party seeking penalties and attorney fees under these statutes has the burden of proving that the insurer received satisfactory proofs of loss and, thereafter, failed to timely tender the amounts it found to be due under the policy and that this failure was arbitrary, capricious or without probable cause.[53]  The terms "arbitrary, capricious or without probable cause" have been interpreted by Louisiana courts to mean "vexatious" conduct without a justifiable good faith defense.[54]  Whether or not an insurer's conduct was arbitrary or capricious or without probable cause is a fact-specific inquiry and shall be determined on the basis of what information the insurer possessed about the claim at the time of the conduct in question.[55]  Neither penalties, nor attorney fees shall be imposed upon an insurer under these statutes if the court finds that the insurer relied upon a reasonable or justifiable defense to coverage.[56]

---

[50]Id.

[51]Id.

[52]Id.

[53]Dickerson v. Lexington Ins. Co., 556 F.3d 290, 298 (5th Cir. 2009) (citing Calogero, 753 So.2d at 174).

[54]Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La. 1993).

[55]Reed v. State Farm Mut. Auto. Ins. Co., 03-0107 (La. 10/21/03), 857 So.2d 1012, 1021.

[56]Id.

The facts alleged by EMC are as follows. Turner reported the loss on October 11, 2005. An independent adjustment was conducted on November 9, 2005 and Monnier inspected the property himself on November 14, 2005. Seven days later, EMC approved demolition costs which were submitted by Paramount. On December 12, 2005, EMC issued advance payments of $100,000 for building loss and $10,000 for lost rents. After receiving and revising Paramount's estimate for the repairs to the building, EMC issued a check in the amount of $235, 841.88, representing the actual cash value of the building loss and a separate check for $19, 905, representing a partial payment for loss of rents.

On March 28, 2006, EMC received notice that the insured was unhappy with Paramount as its contractor and dismissed them from the job, hiring DRS's subsidiary Legends Development ("Legends") to replace Paramount as its contractor. Although EMC was informed by Legends on April 10, 2006 that Paramount's estimate was insufficient and Legends would be submitting additional damage estimates, EMC did not receive such estimates until July 28, 2006. EMC referred these additional damage claims to VECO Consulting on the same day it received Legends's estimate. After receipt of a report by VECO on September 1, 2006, opining that the damage to the property's exterior walls was caused by settlement of the foundation over time rather than wind from Hurricane Rita and that there was no proof that such wind caused damage to rooftop air conditioning unit wiring, EMC notified Legends on September 6, 2006 that it would pay an additional $25, 186.41 after the repairs were complete.

On November 16, 2006, EMC received a new supplemental estimate for an additional $315, 575.40. On that same day, EMC engaged the Leed Corporation ("Leed") to inspect the electrical systems. Leed's January 2007 report opined that only a small portion of the electrical

damage was caused by Hurricane Rita. In consideration of this report and the prior report by VECO, EMC issued its final supplemental payment in the amount of $60,282.39 on January 12, 2007.

DRS does not dispute any of these facts as alleged by EMC. On the basis of these facts, the court finds that EMC is entitled to summary judgment as to DRS's claim that EMC violated R.S. 22:658 and 22:1220 by failing to tender amounts due arbitrarily, capriciously or without probable cause. As to DRS's suggested fact issues concerning the property's air conditioning units, electrical wiring and exterior wall damage, the court finds that DRS has failed to demonstrate that EMC acted arbitrarily, capriciously or without probable cause in its alleged refusal to adjust and/or pay these claims.

The court has reviewed the reports by both VECO and Leed and finds that they support EMC's contention that, to the extent that amounts claimed by the insured were not tendered, such refusal was based on a reasonable good faith defense. The VECO and Leed reports conclude that a majority of the claimed damage to the exterior brick walls and electrical wiring is not attributable to Hurricane Rita, creating a justifiable defense by the insurer to coverage.[57] Additionally, the Leed report opines that the damage to the air conditioning units themselves was slight and did not impact the units' performance. Although Norton's affidavit states that DRS commissioned reports which contradict these conclusions, no copy of these has been filed for the court's consideration.[58]

Recalling the summary judgment standard set forth above, we cannot find that DRS has

---

[57]R. 19-9, 19-10.

[58]R. 23-4 at p. 2.

sufficiently carried its burden of proof as to these issues. Accordingly, EMC's motion for summary judgment as to DRS's bad faith claims for failure to tender amounts due will be granted.

As to DRS's suggestion of a fact issue concerning EMC's alleged failure to adjust claims for damage to refrigerators within the apartment complex, the court finds that DRS has failed to offer any summary judgment evidence in support of this contention. None of the affidavits offered mention this claim and, to the court's dismay, DRS offered no other evidence in opposition to the motion at hand. A party may not avoid summary judgment with unsupported assertions[59] and, accordingly, the court finds that DRS has failed to sufficiently demonstrate the existence of this particular fact issue.

DRS suggests that because its estimate of how much it will cost to repair the property and EMC's estimate for those repairs differ, a genuine fact issue exists concerning whether or not EMC engaged in bad faith conduct in this case. The court does not agree. An insurer is not required to accept an insured's estimate and tender payment in full to avoid bad faith claims.[60] As we have discussed above, an insurer is not subject to penalties and attorney fees under the operative statutes when there exists a reasonable good faith defense to coverage.[61] As we have also found above, such a defense is demonstrated in this case. Even if the estimate advanced by DRS is proven to be more accurate, such a finding would not be enough to sustain bad faith

---

[59]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

[60]Louisiana Bag Co. v. Audubon Indem. Co., 08-0453 (La. 12/2/08), 999 So.2d 1104, 1114-1115.

[61]Id.

claims against EMC.

DRS alleges that Turner was forced to hire an attorney when EMC refused to consider any supplements submitted by DRS after Paramount was fired from the job. In support of this allegation of bad faith conduct, DRS offers the affidavit of Becker, the attorney hired by Turner.[62] Becker's affidavit states that Monnier "refused to speak or in any way deal with representatives of [DRS] and that Becker, at Turner's request, informed EMC that Paramount had been fired and that EMC should disregard the estimate provided by Paramount and adjust the claims based on DRS's estimates. Becker states that he also informed EMC that Paramount was now an "unauthorized agent" with respect to Turner, his client.[63]

We find that, while we take as true DRS's allegation that Turner was forced to hire an attorney in this matter, we do not find that this alone is evidence of "vexatious" conduct. Louisiana courts have consistently ruled that an insured is entitled to dispute any claims as to which it has a reasonable good faith defense. DRS has submitted no evidence that EMC refused, once it learned of the fact that Paramount was no longer an "authorized agent" for its insured, to continue adjusting and paying claims under the policy. As we have noted above, there is also no evidence before this court which demonstrates that EMC refused to timely tender amounts it found to be due. Accordingly, we do not find that DRS has successfully demonstrated the existence of a genuine issue of material fact as to bad faith conduct

Lastly, the court reaches DRS's suggested genuine issue of material fact concerning the secret agreement between the EMC and Paramount. Although the affidavits offered do refer to

---

[62]R. 23-3.

[63]Id.

such an agreement, the court finds that these assertions alone are insufficient to demonstrate bad faith conduct as required under the operative statutes. Taking as true DRS's allegation that EMC and Paramount conspired to set the price of repairs at a sum agreeable to both parties, which the court is unsure is even improper given the realities of insurance claims, DRS has failed to show any actual prejudice due to that thwarted agreement. Similarly, DRS fails to produce any evidence which demonstrates that EMC knew of the limited purpose for which Turner intended to use Paramount or that, equipped with this knowledge, EMC set out to force Turner to use Paramount for repairs beyond that limited purpose. As with DRS's arguments above, the court simply cannot find that DRS has met its evidentiary burden in this case. Moreover, DRS points to no evidence which it might hope to offer in support of these allegations.

## III. CONCLUSION

The court has carefully considered the law and argument advanced by the parties and finds that EMC's motion for summary judgment should be denied as to DRS's claims under business protection insurance policy issued to Turner. Louisiana law clearly permits the post-loss assignment of claims for insurance proceeds.

The court also finds that EMC's motion for summary judgment should be denied as to DRS's standing to assert claims for bad faith conduct against EMC under La. R.S. 22:658 and 22:1220. Applicable jurisprudence suggests that, given an express assignment of these rights, DRS does possess standing with respect to these bad faith claims, but only to the extent that such claims were accrued to the insured at the time of assignment. As noted above, neither party has filed a copy of the purported assignment of rights into the record in this case.

To the extent that DRS does possess standing to maintain bad faith claims against EMC,

the court finds that EMC is entitled to summary judgment on these claims. DRS has failed to carry its evidentiary burden and, though it pleads a lack of discovery, has offered no evidence and no explanation of what evidence it seeks in support of its claims. The court finds no evidence of willful, unjustified refusal to tender amounts found to be due by EMC. Additionally, the court rejects DRS's arguments concerning potential issues of fact in this case because, taking them as true for purposes of this motion, they do not demonstrate "vexatious" conduct as required for the recovery of penalties and attorney fees under La. R.S. 22:658 and 22:1220. These claims will be dismissed with prejudice.

Lake Charles, Louisiana
April ___ ᴸ ___, 2009

_____
/JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE